IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| RICHARD J. BAKER | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 6:15-cv-146 |
| | § | |
| MICROSOFT CORPORATION, *et al.* | § | |
| | § | |
| | § | |

### ORDER

Before the Court is Defendants Microsoft, Ubisoft, Nintendo, Electronic Arts, and Majesco's Motion to Transfer Venue to The Western District of Washington (Doc. No. 91). Plaintiff Richard Baker filed a response (Doc. No. 92), Defendants filed a Reply (Doc. No. 93), and Plaintiff filed a Sur-Reply (Doc. No. 94). For the reasons stated herein, the Motion is **GRANTED**.

### BACKGROUND

Plaintiff Richard J. Baker ("Baker") filed the above-styled case on February 26, 2015 against eight defendants[1] alleging infringement of U.S. Patent No. 5,486,001 ("the '001 Patent"). Doc. No. 1. Baker filed an Amended Complaint on May 13, 2015. Doc. No. 44. Defendants Electronic Arts, Inc. ("EA"), Majesco Entertainment ("Majesco"), Microsoft Corporation ("Microsoft"), Nintendo of America, Inc. ("Nintendo"), and Ubisoft, Inc. ("Ubisoft") (collectively, "Defendants") filed this Motion to Transfer Venue to The Western District of Washington ("the Motion") pursuant to 28 U.S.C. § 1404(a). Defendant Harmonix Music

---

[1] Two defendants, THQ, Inc. and Respondesign, Inc., were subsequently dismissed. *See* Doc. Nos. 12 and 61.

Systems, Inc. ("Harmonix") previously filed a Motion to Dismiss for Lack of Personal Jurisdiction[2] (Doc. No. 52) and thus did not join in this Motion.

Baker is a resident of Queensland, Australia. Doc. No. 44 at 2. His only known address is in Australia. *Id.* Microsoft is a Washington corporation with its headquarters and principal place of business in Redmond, Washington[3]. Doc. No. 91 at 2; Leyvand Decl. ¶ 2. Microsoft's research teams in Cambridge, United Kingdom and Beijing, China conducted some early scientific research related to the accused technology. Leyvand Decl. ¶ 6. Both of these teams collaborated with Microsoft engineers in Redmond, Washington. Leyvand Decl. ¶ 6. Microsoft has some employees in Texas who primarily deal with sales, marketing, and customer support for products other than video games; none worked on design, development, marketing or finance for video games. *Id.* at 4. Microsoft has retail stores nationwide including Texas. Leyvand Decl. ¶ 18.

Nintendo is a wholly-owned subsidiary of Nintendo Co., Ltd., ("NCL") with its headquarters and principal place of business in Redmond, Washington. Doc. No. 91 at 5; Kiel Decl ¶¶ 3, 5. NCL is a Japanese company with its headquarters in Kyoto, Japan. Kiel Decl. ¶ 4. Nintendo has an office in Redwood City, California as well as a small retail-focused office in New York. Doc. No. 91 at 5. Nintendo and NCL have two subsidiaries with employees in Texas: NES Merchandising, Inc. and Retro Studios. *Id.* at 5-6. Neither is located in the Eastern District of Texas and neither was involved in design or development of the accused products. *Id.* at 6.

Ubisoft is a California corporation with its headquarters in San Francisco, California. Amans Decl. ¶ 2. Some of the accused products were developed by a studio in Barcelona, Spain

---

[2] Harmonix argues that it does not have minimum contacts with the Eastern District of Texas and thus the Court does not have personal jurisdiction. *See* Doc. No. 52. As a result of the instant Motion to Transfer Venue, Harmonix's Motion to Dismiss is Denied as Moot.

[3] The Court will take judicial notice that Redmond, Washington is located within the Western District of Washington. FED. R. EVID. 201(b).

and Montreal, Canada. Doc. No. 91 at 6. EA is a Delaware corporation with its principal place of business in Redwood City, California. Wood Decl. ¶ 3. The accused product was designed and developed primarily in Burnaby, British Columbia, Canada. Doc. No. 91 at 6-7. EA has an office in Austin, Texas but no Texas employees worked on design, development, or marketing of the accused product. *Id.* at 7. Majesco is a Delaware corporation with its headquarters and principal place of business in South Plainfield, New Jersey. Doc. No. 91 at 7; Sutton Decl. ¶2. Majesco previously maintained offices in California. Doc. No. 91 at 7. One principal game developer is located in Oregon and another in the United Kingdom. *Id.* at 7-8.

## APPLICABLE LAW

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." 28 U.S.C. § 1404(a). Ultimately it is within a district court's sound discretion to transfer venue pursuant to 28 U.S.C. § 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case. *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000). The first inquiry when analyzing a case's eligibility for section 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter *In re Volkswagen I*).

Once that threshold is met, the Court must then consider the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1197–98 (Fed. Cir.

2009). The party seeking transfer must show good cause, which means that the moving party must demonstrate that the proposed transferee venue is "clearly more convenient than the venue chosen by the plaintiff[.]" *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) (hereinafter *In re Volkswagen II*). Courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil*, 321 F.2d 53; *In re Nintendo*, 589 F.3d at 1198. The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen II*, 545 F.3d at 314–15. Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue. *Id.* at 315; *In re Nintendo*, 589 F.3d at 1200. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314–15.

## ANALYSIS

### I.      Threshold – Eligibility to Transfer

The first inquiry under 28 U.S.C. § 1404(a) is whether the transferee district would have jurisdiction to hear the case. *In re Volkswagen I*, 371 F.3d at 203. Baker does not seem to dispute that this case could have been brought in the Western District of Washington. Microsoft and Nintendo both are headquartered and have their principal places of business in the Western District of Washington and are thus subject to personal jurisdiction there. EA, Majesco, and Ubisoft all admit to having minimum contacts with the Western District of Washington such that they are subject to personal jurisdiction. Doc. No. 91 at 8. Harmonix, although not a party to this motion, admits that it does have sufficient contacts with the Western District of Washington and is thus subject to personal jurisdiction there. *Id.* at 8 n. 56. This case could have been properly filed in the Western District of Washington.

### II.     Private Interest Factors

#### *a.  Relative Ease of Access to Sources of Proof*

Technological advances may have made it more convenient to transport large volumes of documents across the country, but the fact that "access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous." *In re Volkswagen II*, 545 F.3d at 316. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted).

Defendants argue that the majority of documents are on the West Coast and centered around the Western District of Washington. Doc. No. 91 at 10. Microsoft's documents are

5

located primarily in Redmond, Washington[4] and, to a much lesser extent, in Cambridge, United Kingdom. Leyvand Decl. ¶ 15. Nintendo's relevant documents are likely to include its design and development materials, sales and marketing materials, and financial materials. Doc. No. 91 at 10. These materials are located primarily in Washington with some in Northern California and Japan[5]. *Id.* EA's potentially relevant documents are located in Burnaby, Canada (135 miles from Seattle) and Redwood City, California. Wood Decl. ¶ 2, 7. Ubisoft's documents regarding design, development, sales, financial, marketing, or other activity relating to the accused products are located in San Francisco, California. Amans Decl. ¶ 4. The majority of Majesco's business documents and records relating to design, development, marketing, and financial aspects of the accused products are located in New Jersey. Sutton Decl. ¶ 12. Majesco worked with numerous third-party vendors for design and development, most of whom are located in Oregon and California with one developer in the United Kingdom. *Id.* at ¶¶ 4-7. Harmonix's documents are likely in Massachusetts and Redmond, Washington. Doc. No. 91 at 10.

Baker argues that he will be able to find evidence located in the Eastern District of Texas if given time and fact discovery. Doc. No. 92 at 12. He does not point to actual evidence that is located in the Eastern District of Texas, but rather opines that he needs fact discovery to determine if this evidence exists. *Id.* If Baker were able to demonstrate the presence of relevant documentation or evidence within the Eastern District of Texas, that would be pertinent in deciding if this factor weighed for or against transfer. *See Simpleair, Inc. v. Microsoft Corp., et al.*, 2:11-cv-416-JRG, Doc. No. 416 at 8-9 (E.D. Tex. Aug. 9, 2013). However, Baker's inability

---

[4] Documents relating to the design and development of the accused products, relevant emails or custodial documents relating to design and development of the Xbox Kinect, and documents relating to marketing or sales/finances are located on Microsoft's server or in the possession of Microsoft employees, both located in Redmond, Washington. *Id.*

[5] Many documents relating to finances, sales, designs for manuals and product packaging, licensing, contracts and agreements, advertising, marketing as well as technical documents related to the design and operation of the Wii are located in Redmond, Washington. Kiel Decl. ¶ 6. Nintendo also has a marketing and sales office in Redwood City, California. *Id.* at ¶7. NCL is located in Japan. *Id.* at ¶ 4.

6

to point to actual evidence in the Eastern District of Texas is significant. He has not alleged that he has a presence in the Eastern District of Texas, or that he knows of any relevant documents that are being stored in this District. Baker points to a Microsoft data center located in Texas where he claims the accused products may have been distributed to the Forum. Doc. No. 92 at 9. First, the data center is in Las Colinas, which is not in the Eastern District. Second, the mere fact that a Microsoft data center may have sold video games in Texas does not show that there is potentially relevant evidence relating to this case. Baker has not shown that there is any relevant evidence located in the Eastern District of Texas.

A large portion of the potentially relevant documents have been shown to be located in Redmond, Washington, which weighs in favor of transfer. There is also evidence that there are a smaller number of relevant documents in Burnaby, Canada as well as the Northern District of California, both locations which are significantly closer to the Western District of Washington than the Eastern District of Texas. There is also evidence that a small amount of evidence may be located oversees in the United Kingdom and Japan. Even though all of the potentially relevant evidence does not reside in the Western District of Washington, a large majority of it does and a smaller portion resides in jurisdictions significantly closer to Washington than the Eastern District of Texas. The presence of a small amount of potential evidence overseas or outside of the transferee forum does not mean that a transfer is not convenient. *In re Nintendo*, 589 F.3d at 1199-1200. In the instant case, the majority of the potentially relevant evidence has been shown to be in the Western District of Washington. Thus, this factor weighs in favor of transfer.

### b. *Availability of Compulsory Process to Secure the Attendance of Witnesses*

The second private interest factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses

whose attendance may need to be secured by a court order. See *In re Volkswagen II*, 545 F.3d at 316. The Court gives more weight to those specifically identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum. *See Novelpoint Learning LLC v. Leapfrog Enters., Inc*., No 6:10-cv-229, 2010 WL 5068146, at *6 (E.D. Tex Dec. 6, 2010) (stating that the Court will not base its conclusion on unidentified witnesses); *See also West Coast Trends, Inc. v. Ogio Int'l, Inc*., No. 6:10-cv-688, 2011 WL 5117850, at *3 (E.D. Tex. Oct. 27, 2011).

Defendants do not specifically enumerate this factor in their briefing, but rather discuss the "convenience of the witnesses" in general. Doc. No. 91 at 10. Defendants note that Nintendo and Ubisoft employees are the most likely trial witnesses as to Baker's Wii-related claims. *Id.* These employees are situated in Western Washington or Northern California. *Id.* Microsoft specifically names two non-party witnesses who live in the Western District of Washington: Momin Al-Ghosein and Samuel Mann, both former Microsoft employees. Leyvand Decl. ¶ 12. Both of these individuals worked on the design and development of the Xbox Kinect's motion sensing input device, the technology at issue in this case. Thus it is reasonable that these individuals would be witnesses in this case.

Baker has identified himself as a witness as well as an expert witness, Professor Brian Lovell from the University of Queensland Australia. Doc. No. 92 at 17. Both Baker and Professor Lovell reside in Australia. *Id.* Baker has not specifically identified any other witnesses, much less a witness who resides in the Eastern District of Texas. The Defendants have specifically named both party and non-party witnesses residing in the transferee forum. No party has identified any witnesses in the Eastern District of Texas. This factor favors transfer.

8

### c. *Cost of Attendance for Willing Witnesses*

In analyzing this factor, all parties and witnesses must be considered. *In re Volkswagen I*, 371 F.3d at 204. "Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established in *Volkswagen I* a '100-mile' rule, which requires that '[w]hen the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'" *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (citations omitted).

Defendants argue that Nintendo and Ubisoft employees are the most likely witnesses for Baker's Wii-related claims. Doc. No. 91 at 11. Nintendo's likely witnesses are located in the Western District of Washington as well as Northern California, much closer to the transferee forum than the Eastern District of Texas. *Id.* Ubisoft's likely witnesses are located in Northern California or out of the Country. *Id.* Both parties acknowledge that there may be witnesses located in Japan, but the parties opine that travel from Japan to Seattle is much more convenient than Japan to Tyler, Texas. *Id.* The distance between Tokyo and Seattle is 4,779 miles while the distance between Tokyo and Dallas is 6,457. McFarland Decl ¶¶ 7, 8. The distance from Dallas to Tyler is 121 miles. *Id.* at ¶ 9. Thus travel distance from Tokyo to Tyler is approximately 1,700 miles farther than from Tokyo to Seattle. Because the inconvenience of the witnesses increases in direct relationship with the distance traveled, an extra 1,700 miles of travel is significant to this analysis. *In re TS*, 551 F.3d at 1320.

Defendants also argue that this factor favors transfer regarding Baker's claims against Microsoft, EA, Majesco, and Harmonix. Doc. No. 91 at 12. EA's potentially relevant witnesses are almost exclusively in Burnaby, Canada, which is approximately 135 miles from Seattle. *Id.;*

Wood Decl. ¶2. One potential EA witness is located in Florida which is farther from Seattle than Tyler. Doc. No. 91 at 12. Majesco's likely witnesses are in Oregon or California, closer to Seattle, than Tyler. *Id.*

Baker has only identified himself and Professor Lovell as potential witnesses. He has not demonstrated that travel from Queensland, Australia to Seattle, Washington would be clearly less convenient than to Tyler, Texas. Although it is not Mr. Baker's burden to demonstrate a lack of convenience in a transfer, Defendants have shown multiple witnesses who will be more convenienced by travel to the Western District of Washington than the Eastern District of Texas and Baker has not refuted this. "The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech*, 566 F.3d at 1342. Thus, this factor favors transfer.

### d. Other Practical Problems

Practical problems include those related to judicial economy. For example, multiple suits involving the same or similar issues may create practical problems that will weigh in favor of or against transfer. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). Here, there is no parallel litigation present in the Eastern District that would weigh against transferring this case out of the District.

Defendants have argued that this factor favors transfer because the case is in its early stages and all Defendants have either joined the motion or to not oppose it. Doc. No. 91 at 12-13. However Defendants have not identified any practical problems with this case remaining in the Eastern District of Texas. Nor have they identified any evidence as to why the Western District of Washington would be more practical than the Eastern District of Texas. Thus, this factor is neutral.

### III. Public Interest Factors

#### a. *Administrative Difficulties Flowing From Court Congestion*

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. *In re Genentech*, 566 F.3d at 1347. This factor appears to be the most speculative and, on its own, should not outweigh other factors. *Id*.

Defendants have provided evidence that "[f]or the twelve-month period ending December 31, 2014, the median time from filing to disposition and from filing to trial was greater in this District [the Eastern District of Texas] than in the Western District of Washington…" Doc. No. 91 at 13; McFarland Decl. ¶ 18. The median time from filing to trial for civil cases in the Eastern District of Texas was 21.9 months, while the median time for the Western District of Washington was 19.6 months. Doc. No. 91, Ex Q. However, Defendants' evidence is for civil filings as a whole, and does not specifically look at patent cases. *See Saint Lawrence Comms. LLC v. LG Electronics, Inc.*, Case No. 2:14-cv-1055, 2015 WL 7854738, at *5 (E.D. Tex. Dec. 3, 2015). Therefore, this factor is neutral.

#### b. *The Local Interest in Having Localized Interests Decided at Home*

The Fifth Circuit explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen I*, 371 F.3d at 206. This factor analyzes the "factual connection" that a case has with both the proposed and transferor venues. *See Id*.

Here, it is undisputed that no party is "home" in the Eastern District of Texas. Baker does not contend that he resides in this District or has a business in this District. Rather, Baker only argues that the allegedly infringing products were sold in the Eastern District of Texas. However, this interest could apply to any district in the United States where allegedly infringing products

11

were sold. Interests that could apply to any district in the United States, for example the nationwide sale of infringing products, are disregarded in favor of particularized local interest. *In re Volkswagen II*, 545 F.3d at 218. Baker himself contends that the accused products were sold nationwide. Doc. No. 94 at 4. Therefore the Eastern District of Texas has no relevant particularized localized interest.

In contrast, Microsoft and Nintendo are headquartered in the Western District of Washington and employ thousands of workers there. Doc. No. 91 at 14. The defendants who are not headquartered there, conducted business with Microsoft and Nintendo in Washington. Baker's complaint alleges infringement by the software defendants based upon their use of Microsoft and Nintendo technologies (Xbox Kinect and Wii, respectively). *See* Doc. No. 44. Majesco and Harmonix have stated that they frequently traveled to the Western District of Washington in connection with the accused products. Doc. No. 91 at 3 n. 12 and 7. Ubisoft has stated that its former Creative Director, who worked on the accused products, now resides in Redmond, Washington, and Ubisoft did a public game demo of the accused product at a program in Redmond, Washington. Amans Decl ¶ 6.

Local interests may favor transfer when the transferee venue is home to a party because the suit may call into question the reputation of individuals that work and conduct business in the community. *See In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009). Baker has asserted that his reputation is of concern in this case as well, but he has made no showing that the Eastern District of Texas is where he works or conducts business such that his reputation in that forum would be relevant. Doc. No. 92 at 5. Because the defendants have collectively identified multiple individuals whose work relates to the accused technology who are located in the

Western District of Washington, the Western District of Washington has a greater local interest in the outcome of litigation. Thus, this factor weighs in favor of transfer.

### c. Familiarity of the Forum with the Law that Will Govern the Case and Avoidance of Unnecessary Problems of Conflicts of Laws

Defendants agree that the remaining public interest factors are neutral. Doc. No. 91 at 14 n. 81. Baker does not specifically address these factors but does state that "this Court has experience to hear the case and a suitable jury can be found in the Forum." Doc. No. 92 at 19. Patent cases are governed by federal law, and there has been no evidence brought forth that there would be a conflicts of law problem were the case to be transferred. Baker does not contended that the Western District of Washington would be unfamiliar with patent law. These two factors are neutral.

## CONCLUSION

In sum, four factors favor transfer and four factors are neutral; no factors weigh against transfer. Also, the most important factor, witness convenience, weighs in favor of transfer. Thus, weighing all of the evidence, the Defendants have shown that proceeding in the Western District of Washington would be clearly more convenient than the Eastern District of Texas. Accordingly, the Court **GRANTS** Defendants' Motion to Transfer Venue to the Western District of Washington. The Court also **DENIES** Harmonix's Motion to Dismiss for Lack of Personal Jurisdiction as moot.

So ORDERED and SIGNED this 18th day of February, 2016.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE